Good morning, your honor. My name is Rachel Kinstrand. I'm from the Office of the State Appellate Defender and I represent the appellant Roscoe Woods. Today I'd like to focus on Argument 1, Sections A and B, which deals with the improper introduction of rebuttal evidence and other acts evidence into Roscoe Woods' trial. Rule 412, which is at issue in this case, is entitled Disclosure to the Accused and it requires that the state, upon receiving notice of any defenses that the defendant intends to raise at trial, that the state disclose within seven days of trial the names and addresses of any witnesses it intends to call in rebuttal, coupled with a specific statement as to the substance of their testimony. Despite the language of this rule, the state did not comply with it. Instead, much to the surprise of defense counsel, the state waited until after it heard Woods testify to call Rosalinda Tafik as its rebuttal witness. Counsel, is the state entitled to call witnesses in rebuttal if the defense says something during his testimony or his case that requires rebuttal? Is the state entitled to call a rebuttal witness? The state is entitled to call a rebuttal witness, but they are entitled to do so within the parameters of the rule. And I think in its brief... Why didn't Ms. Tafik a rebuttal witness? That's what they say. Why wasn't she a rebuttal witness, according to your theory? Well, my theory is that she was a rebuttal witness, but my theory is that they didn't comply with the terms of the rule. They didn't disclose a specific statement as to what the substance of her testimony would be. Isn't the only thing they didn't say is, in terms of her testimony, is where the defendant was standing or where his hands were placed? Wasn't that like the crux of what your complaint is, that she didn't say exactly where his hands were placed or his stance at the time he was firing the gun? Isn't that the only thing that wasn't specifically highlighted in her statement? Well, first of all, they didn't disclose her as a rebuttal witness, period. They disclosed her in their initial discovery disclosures, but they never indicated that they were going to call a rebuttal. So they said, here's a possible witness that we might call in our case. Correct. And they indicated her name, right? They did. And when was that done? How much prior to trial was that accomplished? I believe that was done sometime in 2007. So it was several months before. And this witness, she wasn't in hiding or anything, was she? I mean, she was available to be questioned or to be contacted or to have conversations with, was she not? I believe that she was listed. I'm not disputing that she was listed in their initial discovery disclosures, but that still doesn't excuse the State's noncompliance with the rule. And I think How does the State know who they're going to use in rebuttal until they've heard the defendant? The State, first of all I didn't make that advert to ever testify. The State, the rule requires that when the State receives notice of any defense that the defendant intends to raise, within seven days of trial, they're supposed to disclose their rebuttal witness and a specific statement as to their testimony. Now, Tafik would have made a good witness against Woods' self-defense claim whether or not Woods testified. I mean, her testimony was that she saw the shooter turn around and fire a gun. Now, this tended to negate any claim of self-defense. He turned around, he aimed, and he fired. So whether or not they disclosed it in their initial disclosures or not, they were still required to comply with the part of the rule which requires them to include a specific statement of the substance of their testimony. Your complaint is the State did not disclose in their statement the manner and positioning of this defendant during the shooting. My position is that the State didn't disclose what her testimony was going to be, the substance of it at all. Nothing was in the police report that would have indicated... Didn't you know that she was going to testify, that she saw the defendant fire a gun? Are you saying you didn't know that either? I'm saying she was identified as a witness in the police report. That she saw the defendant fire a gun? No, she couldn't identify Woods. She saw an African-American male running past her store wearing a coat that fit a similar description to what the other witnesses said the defendant was wearing, firing a gun. Isn't that what the State disclosed? I think the only thing that came out was that the police had interviewed her as a witness in the case and that she had claimed to have seen a shooting. I don't think there was anything specific. And again, even if that came out... She didn't testify that she saw somebody. She told the police she saw a black male running past her store firing a gun. Do you recall that? I recall that there was a mention of her in the police report that she had seen a shooter. But the point isn't that that was disclosed initially. The point is that once the State knew that Woods was raising a self-defense claim, they had an obligation under the rule to provide a specific statement as to what her testimony was going to be. It's not that you comply with the first part of the rule and then this other part of the rule is rendered superfluous. Otherwise, there would be no need for a seven-day time limit in that rule. I mean, if compliance with the initial disclosure requirement was all that was required of the rule, then the State could say any time that this issue came up, well, you know, we disclosed it initially to defense counsel. So whether or not the defendant decided he was going to put on any defense at trial, we had no obligation to tell them what we were going to do in rebuttal, which seems entirely contrary to the text of Rule 412. Or the alternative would be that they could say, well, we didn't form the intent to call her until after we heard Woods testify. The problem with that, again, is the text of the rule. The rule clearly says within seven days of trial, upon receiving notice of the defendant's defenses, they have to disclose a rebuttal witness and a specific statement of their testimony. I don't know what the point would be of having that seven-day time limit in there if they could say, well, we didn't form the intent to call her until after we heard what the defense were going to be. Is there anything in the record that points to or shows the defendant was surprised or unduly prejudiced by this rebuttal witness's testimony? Well, I think absolutely, Your Honor. Or is it something that an author of an appellate brief came up with? Well, we Where in the record is it? Your Honor, in response to your question, I would say this. She was an independent witness, an owner of a religious store, and she was able to describe the way the shooting took place in a manner that counsel, clearly at trial because he objected to this, was completely unaware. Now, Judge Sachs decided this wasn't a discovery violation. I believe his ruling was completely incorrect on this score because I think Of course you do. That's why you're here. Right. But part of your quarrel is with the State's decision to use her as a rebuttal witness as opposed to in their case-in-chief. But isn't that their prerogative to decide how they want to use these witnesses based on what they think the evidence will show and whether they are waiting to see whether there's something that needs rebuttal? I mean, that's how they use this witness. And your quarrel with them is that given what they knew her testimony was going to be, they should have used her and disclosed her as a witness in their case-in-chief. But that's not your prerogative to decide that for them, is it? But it's not the State's prerogative to violate the terms of the rule either. Whether or not they disclosed it initially doesn't mean that they followed the clear text of the rule which requires them to disclose a rebuttal witness. I don't think you can say and be genuine to the text of the rule that because they disclosed it initially and obviously didn't provide a specific statement as to what she was going to testify to, that they somehow complied with the latter part. And I think even the fact, and going back to Justice Harris's point, I think even the fact that the prosecutor, number one, agreed to stipulate after the fact that this witness, Tafik, had never told the police that she saw the position of the shooter is indicative of the State's acknowledgement that this was going to be a rebuttal witness. And number two, again, going back to your point about the prejudice, I think Tafik was an independent witness. The other two witnesses either recanted or was the partner of the victim in this case. And second of all, the prosecutor was able to refer to this in closing argument. It was one of the last pieces of evidence that the jury heard. None of the firearms recovered in this case were consistent with the bullet being fired. And I think the evidence from this particular witness was the thing that the defendant's conviction turned on. I mean, are you saying that this was what caused him to be convicted by this jury? I think when you're considering the level of prejudice caused by the State's failure to comply with the rule, I think one of the things you consider was the closeness of the evidence. And I think in this case, the evidence on Woods' defense of self-defense was close. I mean, the description of the way this shooting took place was that Woods was approached by individuals who were likely members of a gang that had been involved in a shooting involving his cousin a month earlier, that there had been an altercation at the bus stop, that he was running away, and that, you know, as the police officers in this case testified, as did my client, there were gang signs being thrown up, and that he was fearful. And he testified that he was fearful. And, you know, when this case came down to his version of how the shooting took place, which was that he was being chased by people, he saw an individual make a gang symbol and standing on one of the corners near the incident with a gun, and that he fired the gun, you know, behind him without intention to hurt anybody, but nonetheless put his arm behind his back and fired a gun. And you have a religious store owner coming up and testifying immediately after his testimony, and the state simply had to know that her testimony was going to be great in rebuttal, because they had her at the ready, available to testify. And she basically refused that. She gets up there and says she saw an individual turn around and aim and fire a gun. I mean, this was incredibly harmful to the evidence related to self-defense. MS. GOTTLIEB You basically have, I guess, agreed that she would have been a great witness in the state's case-in-chief. So I assume that the defense knew that. Did you make any attempt to interview her with respect to that before the trial? Because obviously, if you thought she would have been a good witness in the state's case-in-chief, maybe you would have wanted to interview her. Was there any attempt to do that? MS. GOTTLIEB Well, I think, to clarify, I think my point is that she's a great self-defense witness regardless. She's a great witness to refute any claim of self-defense. Because she tends- MS. GOTTLIEB I guess my question is more narrow than this. The state had this, the name of this witness was known to the defense from the beginning. Had any attempt been made, she was available, as Justice Karnazes asked you at the beginning of your testimony, did you make any attempt to interview her or to discover what it was that she was going to testify to that now seems to be the crux of your argument? MS. GOTTLIEB Well, Your Honor, again, I think in some way that characterizes the rule in a way that places the burden on defense counsel to know what the state is going to call in rebuttal. They didn't call her in her case-in-chief. You know, again, that was their prerogative to do so. But like I said, she was an excellent case, whatever Woods was going to testify to in terms of self-defense. Regardless of what Woods testified- MS. GOTTLIEB That's my point. So knowing that, wouldn't you have wanted to interview her? If you had, then you would have known whatever she was going to say, right? MS. GOTTLIEB But if they don't call her in their case-in-chief and they put her on to refute a claim of self-defense, it completely eviscerates the rule. That's not what the rule requires. The rule doesn't say, I disclose her initially, defense counsel, it's incumbent upon you to go interview her. I may not call her, but hey, I'm going to call her in rebuttal. There's nothing in that rule that says that that initial disclosure was compliance with the rebuttal portion. And the entire point of these discovery rules is to avoid unfair surprise. And clearly, defense counsel was surprised by what her testimony was going to be, because the prosecutor decided to tell him right before he called her what she was going to testify to vis-à-vis the position of the shooter. That was the objection at the beginning of her testimony. MS. GOTTLIEB Could you wrap up your argument, please? MS. GOTTLIEB Sure. I did want to touch briefly on the other act's evidence. Again, my argument was twofold. It was that it was not relevant. I don't think Terrell Durham's testimony tended to show any fact relevant to the shooting. It tended to prove any fact relevant to the shooting. The gun, the description of the gun that Durham described for the court and the jury at trial was a silver gun. Kenyon Taylor, who was the witness that Roscoe Woods apparently went to after the shooting, described the gun as a black gun. There was no threshold similarity between the incidents. They were, you know, seven to eight hours apart. MS. GOTTLIEB What is the standard of review as to that issue? MS. GOTTLIEB Well, I think as to whether or not there was a violation in terms of allowing the other act's evidence to come in, I think you could review that de novo. I think you could determine whether or not that act was relevant. As to whether Judge Sachs made the appropriate ruling in allowing the evidence to come in, I think you would review that under an abuse of discretion standard. And my point here is that Judge Sachs didn't engage in the proper balancing test in determining whether this evidence should come in at all. I mean, his point was, and I think I quoted it in the opening brief, was that any evidence that comes in against the defendant is prejudicial. That's not what the balancing test is. It requires the court to undertake a thoughtful... JUDGE LEBEN Well, he had, Judge Sachs had considered, and there had been discussion about this before the trial started, correct? MS. GOTTLIEB Correct. JUDGE LEBEN And he said, if I recall correctly, it doesn't come in on your case in chief. However, that's like a huge, hey, where's the flag? You know, it may be admissible down the line if you open the door.  JUDGE LEBEN That's essentially what happened? MS. GOTTLIEB I think the problem is that that assumes that the evidence is relevant in the first place. And I don't think it was relevant to any fact and issue with respect to the altercation. And with that... MS. GOTTLIEB Good morning, Your Honor. It's again Assistant State's Attorney Annette Collins for the people of the State of Illinois. JUDGE SCHROEDER Why didn't you tell him, Annette? MS. GOTTLIEB Judge, we told him. We told him everything. We complied with the rule, Your Honor. As early as 2007, two years before trial, we listed Ms. Rosalinda Tawfiq as an occurrence witness, somebody who had viewed the shooting. We provided her name. We provided her address. We gave the defense counsel all of the police reports reflecting the statements that she had provided to us. Five days before trial, defense counsel filed his answer to discovery, raising two affirmative defenses. All that he said in that answer was that he might raise defense of others and necessity. There was no further information. Now, I'm not suggesting that defense counsel had to tell us exactly what the facts were going to be underlying those defenses. But the fact that it wasn't included in that answer means that we had no other choice. We had no idea what the defense was actually going to be, factually. And although defense counsel suggests that that answer provided us with sufficient information to intuit that, yes. MS. GOTTLIEB Counsel, the whole dispute was whether or not the defendant was running when he was running away or whether he was actually, you know, knowingly firing. So the state must have known that how the defendant was positioned and what he was doing when he fired the gun would become very important in this case. MS. TAYLOR Not true, Your Honor. And the reason is because all that the state knew before trial was that the defendant had provided an answer to the police wherein he, or provided a confession, or not a confession, but a statement to police after his arrest, wherein he said to police, I didn't have a gun. I didn't have a gun. I didn't do any shooting. I heard some shots. I heard that a police officer might have been shot, but I didn't shoot. The state also had information from its witnesses that the shooter matched the description of defendant. The shooter was named Nunu, which was defendant's nickname in the gang, among others. And the state also had information from both the officer, Officer Como, who was one of the people being shot at, had information from him in addition to defendant's own cousin, Tory Davis, who provided a grand jury statement and a written statement during the investigation shortly after the shooting. The state knew that both of those witnesses said that defendant stopped, turned, and fired. Now, with this information, the state would have no idea that defendant would simply counter that with an opposite version, particularly since, and I think defense counsel kind of glosses over this, we have physical evidence in this case. We know where those casings were found. They were found between two addresses. They weren't found spread out along the street as if somebody were shooting and the cartridges were ejected as they were running. So there was no way that physical evidence, our witnesses, there was no way we would know that defendant would take the stand and come up with this story about shooting behind him. It contradicted everything that we knew about the case. And in fact, prior to trial, if I could remind this Court, during voir dire, defense counsel had asked the judge to specifically ask the potential jurors if they understood the principle that defendant wasn't required to take the stand. So even at that point, we weren't sure that defendant was even going to take the stand. And likewise, if we take a look at defendant's, or defense counsel's opening statement in this trial, he mentioned nothing about defendant taking the stand. He mentioned nothing about a countervailing version of events about how the shooter stood. In fact, all that defense counsel said was, yes. In your brief, you make an argument that because it wasn't, because the description of how the shooter was standing was never reduced to writing or memorialized in writing, that's the reason that you didn't have to disclose it. I mean, can you respond? That seems like hair splitting to me, but can you speak to that? Absolutely. Absolutely. I wasn't, Your Honor, when I looked at the defendant's appellate argument, I wasn't sure. And in fact, if we take a look at defense counsel's argument below, we kind of see how it's changed a little bit from trial to appeal. At trial, defense counsel said, I didn't get her statement to the assistant state's attorney in writing. They didn't put that in writing. So I had to remind counsel and the court that Rule 412 does not require the state to reduce to writing every witness's statement. That is absolutely bedrock, a principle that has been said multiple times by this court and the Supreme Court. Now having reminded the court of that principle, which is directly counter to what trial counsel raised below, the next question arises whether we have to do something similar for witnesses whom we call in rebuttal. And the answer to that is next, of course, no. And if I could also just touch on the purpose of this rebuttal paragraph, that rebuttal paragraph, by its own terms, really addresses only those witnesses that we discover after we look at the defendant's answer and witnesses that we haven't previously disclosed to the defense. That's why it requires us to give the name, the address, any of the other required discovery pursuant to Rule A in the predecessor subsections, and then, of course, the statement that defendant is focusing on. There would be no reason for us to have to provide that information if we had already provided the information about this witness earlier in discovery. Because, as Your Honors had pointed out, if we had already provided the information, defense counsel below could easily have spoken to this witness. She was a local store owner. She had that store for 20 years. She was available to the defense. And while I do not know, nor do I think appellate counsel knows whether or not counsel even spoke to her, there's a likelihood that counsel did speak to her that was well aware of it. Because, remember, trial counsel's objection below only went to, I didn't get her statement in writing from the state. I didn't get that testimony that she's going to give that the defendant is focusing on. I didn't get that in writing in my papers. There is companion law to this rule. And that companion law is that the duty to disclose rebuttal witnesses does not arise until the intent to call those witnesses comes about. Defendant ignores that because to recognize that principle is to actually find that we completely complied with discovery in this case. As soon as defendant took the stand and provided this countervailing version for the first time ever, that is when we told defense counsel, by the way, we're going to have to call Ms. Tawfiq. Now, although she didn't mention it here today, there's some reference to closing argument that somehow supposedly on the part of the state supposedly shows that we had this intent as early as pretrial. I would suggest that that is a misinterpretation of that statement in closing. The state's attorney was talking about potential witnesses. We have to, when we put on a trial before a jury, we cannot stop the proceedings and say, hold on, we've got some rebuttal witnesses. We're going to take a few days to get them. We have to have all our witnesses, whether we call them or not, we have to have all of them available, all of them under subpoena. And as a result, if we have a witness that we don't call, for purposes of our opening case in chief, they have to be made available just in case. And that's exactly what the prosecutor said at closing argument. We had Ms. Tawfiq available just in case defendant got up on the stand and said something different, something wildly different than the events of all the other witnesses had seen. Excuse me, Ms. Collins, if I may interrupt. At the time that the defendant took the stand in his defense, did the state have in its file in writing a statement by this rebuttal witness that she had seen him run past the store, turn, and then point the gun in the face of the man? No, it was not. And I think that was the whole point of our bringing her to the attention. Do you know if that was known by the prosecutors that she would be able to testify in that manner? There is some indication in the record, and it comes from defense counsel, but it is not repudiated by the state. There is some indication in the record that defense counsel was told by the state in this case that when they were prepping their witnesses, that's the first time that they may have heard of this detail. Now, we remember, this is not a detail. Well, had that detail been in writing at the time the defendant took the stand, would you say the state had a duty to disclose this to the defendant? If that detail was in writing, was part of a written statement that the witnesses provided or a verbatim account, absolutely. And that's not because of the rebuttal paragraph, but it's because of the Rule 412A, one of the subsections, I think it's three, relating to the witnesses and the state's requirement to tender all written statements of witnesses to the defense. The fact that it was nonexistent, however, is dispositive and renders it nondisclosable. Trumps it. Absolutely, Your Honor. Defendant touched on prejudice, and I'd like to point out to this Court just very briefly that defense counsel was well aware of what the facts in this case were. Defense counsel had voluminous discovery. He knew what the state's witnesses were going to say. He knew that our theory of the case was the defendant turned, stood, aimed, and shot. That came through from multiple witnesses. It also came through from the physical evidence that we disclosed to him prior to trial. The testimony of Ms. Tawfiq was cumulative as that. She was not our best witness. Contrary to what defendant says, she couldn't identify the face of the shooter, so she wasn't able to point to the defendant in court. But what she could do is she could take defendant's testimony and rebut it, and that was her purpose at trial. It was a legitimate purpose, and we fulfilled all discovery requirements with respect to her and all other witnesses in this case. Now, as to defendant's second claim, Terrell Durham's testimony in rebuttal, that testimony was extraordinarily probative and highly relevant with respect to defendant's state of mind. As defense counsel told this Court, the issue in this case was whether the defendant had the intent to shoot Ms. Tawfiq, whether he had the intent. And defendant's claim, as, of course, I'd belabored before this Court, was that he just turned around and shot and didn't even look where he was shooting. But Durham's testimony went to something that happened about seven or eight hours earlier in a slightly different location. Right. And there was enough similarities, which we do not need a great amount of similarities to present it as other crimes evidence of intent. There was enough similarities in the case to establish a high relevance. Well, I think we can all agree that there was, a gun was present in both scenarios, but other than that, what were the similarities? Oh, there was far more. We have an identity of location, and the identity of location was Clementi High School. And there was testimony that Clementi High School was a known staging ground for gangs. In particular, the Spanish Cobras considered that their turf. And a short way down from Clementi High School was where the Maniac Latin Disciples had their turf. So it was at a crossroads of two gangs where gang activity was rampant. As a result, when there were crowds outside of Clementi, there were Spanish Cobras, there were Spanish Cobras available. And as a result, that's why defendant went in the morning. The morning before school started, which means there were crowds. There were students, and presumably there were Spanish Cobras then, too. Just as there would be when school was let out at that very location. So the times, while they may be different, they are highly interconnected because of the fact that one is before school and one is after school. So students are available. And that's what defendant was doing that day. Contrary to what he testified to, that he was on his way to his grandma's house and just coincidentally got wrapped up in this gang melee. The state's theory is that he was out there looking for rival gang members to shoot them. Or to fight them, Your Honor. To confront them. He was carrying a gun in case things got out of hand. But as we know, as the evidence presented itself, there wasn't the initial fight. And defendant, I would suggest to Your Honors, that that earlier event that morning when school was letting in is indicative of how he was looking for a Spanish Cobra. It puts us right into his mind from the words out of his own mouth. Tell us that he was looking for somebody who was a Cobra. And when he found out that Terrell Durham was not a member of the Spanish Cobra gangs, but rather was a member of the GDs, defendant told him, I don't have a problem with you. By the way, what's the GDs? Gangster Disciples. Thank you, Your Honor. The prejudice analysis in this case is zero. There is absolutely no prejudice from this evidence. It is, it shows defendant with a gun and it shows defendant as gang member. That's the most you could say about the prejudice of this other crime's evidence. But we know defendant's a gang member. We've heard that over and over and over again in our case in chief. We also know defendant had a gun. By his own admission, he says, I brought a gun on the bus. And as a final matter, Your Honors, I would like to point out that when you take a look at this record, Judge Sacks reviewed this claim exactly the way he should have reviewed this claim. There was no misapprehension of the balancing test and the balancing calculus. He knew what the probative value was and prudently, albeit it's still our position, it could have come in the case in chief, he gave defendant the benefit and he waited until it became even more relevant in rebuttal. Now, as far as Judge Sacks' consideration of the prejudice, the remarks that Judge Sacks said with respect to the prejudice were due to counsel's inability to articulate prejudice. And I would suggest, Your Honor, that to this day, nobody on the defense side has articulated any prejudice in this. And this evidence was highly relevant and should have been admissible and was properly admitted. So for these reasons and those expressed in our briefs, we would ask that this Court affirm defendant's conviction. Thank you, counsel. Thank you. Ms. Kinstrin, brief rebuttal, please. Your Honors, the State's construction of this rule is just not supported by its text. The State claimed in its argument that the fact that they complied with Rule AI or A1, that the fact that they disclosed her as a potential witness somehow complies with the terms of the rule pertaining to rebuttal witness. Again, I see no reason why the drafters would have put in the specific language that would have been necessary. The State has to disclose a specific statement as to the substance of the testimony within seven days of trial. It would render that portion of the rule completely superfluous if the Court were to say, well, they disclosed her initially. It wasn't in the police reports what she was going to testify to, but that's okay for the purposes of the rule. It's just not supported by the text. Counsel just told us that when your man got on the stand, there was nothing written in their file. There was nothing in the file as to the manner of the shooter's body position, what he was pointing. There was nothing written. So what was there to disclose? It wasn't part of the statement. But the prosecutor knew what the substance of her testimony was going to be. That's what the rule requires. Well, we hope in a perfect world that all attorneys know what their witnesses are going to say to the letter. But the counsel just presented to us, there was no such statement as to the information which you're complaining about. Your Honor, I just, I don't think the record in this case supports it. And the State's attorney made reference to closing argument. I mean, I think the words of the prosecutor highlight the fact that they knew the damage that this witness was going to do. They specifically said they had her available in case the defendant came up with some cockamamie story of a gunshot wound. They had to know what she was going to testify to. I don't see how any reasonable person could read that any other way than that they were well aware of what the substance of her testimony was going to be. They didn't disclose it. The fact that they stipulated that she never told the police that, and the fact that the prosecutor made those remarks, is totally indicative of their willingness to go to court and not only construe the rule, the State wants you to construe it and still comply with the portion pertaining to rebuttal witnesses. And I think the prosecutor knew exactly what he was doing in this case. And the second point I want to raise with respect to this issue is that if a defendant is going to raise self-defense, he's going to have some explanation for shooting the gun. I don't know how they could say, well, I didn't know about a countervailing version of how to do that, and I therefore didn't know that this rebuttal witness was going to be refuting what he says. I think by the very nature of the fact that it was a self-defense claim, they knew that her testimony was going to be relevant in rebuttal. So I'm, I'm, I don't, I don't think that's a, again, I don't think it's in, comports with the terms of the rule, and I don't think it comports with what defense counsel disclosed. And I think as, as the State's attorney highlighted, they knew what the theory of, they knew what the theory of their case were going to be. They knew that she was going to be a good witness. The only other thing I'll say, and I'm, I'm, with the leave of the court, I'll just say this with respect to the other acts evidence. This was not extraordinarily probative of anything. It did not go to intent. In People v. Bedoya, which this court decided a number of years ago, the, an individual, other acts evidence that took place 45 minutes to the, the crime that the defendant was actually charged with, was excluded, was, was found that it was reversible error and it should have been excluded from the trial. This took place seven or eight hours later. The gun description was different. It had no bearing on this altercation in which Woods was running away from this crowd seven or eight hours later. And I think the fact that the State tried to make this about a, a gang shooting is indicative of the... The fact that the State is, tries to argue this point about the Spanish Cobras being present and all this other stuff highlights the fact that it was prejudicial. You think that's irrelevant. It had nothing to do with gangs. But Woods didn't, but Woods didn't dispute his knowledge of, of gang activity. That wasn't a, it wasn't a, it wasn't a disputed issue in the trial. The disputed issue is whether or not he intended to, to shoot anybody that day or whether he was doing it in the school. The thing that took place at the school, if you can even believe this testimony, again, it wasn't, there was no threshold similarity between these two altercations. But I think that highlights the, the entire problem with this, this whole case in rebuttal, which is it was the last thing that the jury heard in, in, in relation to, to what Woods testified to. And it was highly damaging to, to the defense of his case. And for that reason, I would ask the court to reverse his trial.